Filed 6/28/13; pub. order 7/24/13 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BENNIE G. TRAPP, SR. et al., | |
| Plaintiffs and Respondents, | E054908 |
| v. | (Super.Ct.No. RIC1107293) |
| RANDALL D. NAIMAN et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Paulette Durand-Barkley, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

Murphy, Pearson, Bradley & Feeney, John P. Girarde, Jason E. Fellner and Nicholas C. Larson for Defendants and Appellants.

Bennie G. Trapp, Sr., and B. Garrett Trapp, Jr., in pro. per. for Plaintiffs and Respondents.

1

Plaintiffs and respondents Bennie G. Trapp, Sr., and B. Garrett Trapp, Jr., (Plaintiffs) initiated this action based on the foreclosure and subsequent unlawful detainer action against them. The defendants in this action include the financial institutions and their lawyers, Randall D. Naiman and Naiman Law Group, P.C. (erroneously sued as "Law Office of Randall D. Naiman"). Only Naiman and Naiman Law Group, P.C. appeal (Defendants). Defendants brought a special motion to strike (anti-SLAPP motion) under Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute). The trial court granted the motion as to Plaintiffs' claim for negligence and abuse of process, but denied it as to their claims for quiet title, wrongful foreclosure, breach of duty of good faith and fair dealing, and unfair business practices under Business and Professions Code sections 17200 et seq. The court cited *Garretson v. Post* (2007) 156 Cal.App.4th 1508 [Fourth Dist., Div. Two] (*Garretson*) in support of its decision. Defendants appeal, contending the trial court erred in applying the *Garretson* holding to the facts in this case. We agree and reverse the order to the extent it denies the anti-SLAPP motion.

## I. PROCEDURAL BACKGROUND AND FACTS

This action arises from the nonjudicial foreclosure proceedings brought by LaSalle, later acquired by Bank of America, (LaSalle/BofA) against Plaintiffs relating to the real property located at 12860 Perris Boulevard, No. D7, Moreno Valley, California 92553 (Property) along with subsequent unlawful detainer (UD) actions pertaining to the Property filed by Defendants on behalf of their clients, LaSalle/BofA. Following the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

nonjudicial foreclosure of the Property, Defendants, as attorneys for LaSalle/BofA, served three separate 3/60-day notices to vacate on Trapp, Sr., and unknown occupants, followed by three separate UD actions.  The first UD action against Plaintiffs was filed on August 25, 2008, and then dismissed on November 5, 2008.  The second UD action was filed on January 5, 2011, and then dismissed on or about March 24, 2011.  The third and final UD action was filed on April 7, 2011.  One week later, Trapp, Sr., filed an answer and cross-complaint, which were rejected by the court because an answer is the only allowed response to a UD action.  Thus, Plaintiffs filed the instant action on April 27, 2011, and the third UD action was dismissed without prejudice on or about June 16.

On May 4, 2011, Plaintiffs filed their first amended complaint against Defendants and others, alleging causes of action for (1) quiet title, (2) wrongful foreclosure, (3) breach of the duty of good faith and fair dealing, (4) unfair business practices under Business and Professions Code section 17200 et seq., and (5) negligence and abuse of process.  Plaintiffs' allegations as to Defendants are based on defendants' actions on behalf of LaSalle/BofA in the underlying UD actions that occurred after the nonjudicial foreclosure of the Property.  Plaintiffs allege that Trapp, Sr., owned the Property subject to this lawsuit, and that Trapp, Jr., resided on the Property.  They claim Defendants "abused the court processes by filing numerous [UD actions] when [Defendants] knew or should have know[n] that the foreclosure was invalid," and that the UD actions "were filed in an effort to harass Plaintiffs with unjustified claims which [Defendants] knew or should have known were not proper."

3

On June 9, 2011, Defendants filed their answer, and two days later they filed an anti-SLAPP motion. Defendants claimed the UD actions they filed on behalf of LaSalle/BofA arose from a protected activity. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*); *Feldman v. 1100 Park Lane Assoc.* (2008) 160 Cal.App.4th 1467, 1478-1484.) Defendants further claimed that Plaintiffs could not show a probability of prevailing on their claims because the UD actions were privileged under the litigation privilege doctrine.

In opposition, Plaintiffs argued that (1) the anti-SLAPP motion was untimely because it was filed 66 days after the complaint was served, and (2) Defendants cannot show that their actions were taken in furtherance of their right to free speech in connection with a public issue. The trial court granted the anti-SLAPP motion as to one cause of action only, namely, the negligence and abuse of process claim. As to the remaining causes of action, the court denied the motion based on the holding in *Garretson*. Defendants appeal.

## II. APPLICABLE ANTI-SLAPP LAW

Under section 425.16, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike . . . ." (§ 425.16, subd. (b)(1).) "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to

4

chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen*, *supra*, 37 Cal.4th at pp. 1055-1056.) The purpose of the statute is to prevent the chilling of the valid exercise of these rights through "abuse of the judicial process" and, to this end, is to "be construed broadly." (§ 425.16, subd. ( a); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 312-313 (*Flatley*).)

The anti-SLAPP statute establishes a two-step procedure whereby the trial court evaluates the merits of a plaintiff's cause of action, using a summary-judgment-like procedure, at an early stage of the litigation. (*Flatley*, *supra*, 39 Cal.4th at p. 312.) First, the defendant is required to show that the cause of action arises from protected activity, i.e., activity by the defendant in furtherance of his constitutional right of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67 (*Equilon*).)

"'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.]" (*Rusheen*, *supra*, 37 Cal.4th at p. 1056.) Additionally, the absolute litigation privilege of Civil Code section 47, subdivision (b), for "judicial" or "official" communications helps define the meaning of protected activity under section 425.16. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115-1116.)

5

If the trial court determines that the defendant has met his initial burden, the burden shifts to the plaintiff to demonstrate a reasonable probability of prevailing on the merits of his cause of action. (*Equilon*, *supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, abrogated in part by statute as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.) The role of the trial court is not to weigh the credibility or comparative strength of the parties' evidence; rather, it determines whether the defendant's evidence defeats the plaintiff's prima facie showing as a matter of law. (*Wilson v. Parker, Covert & Chidester*, *supra*, at p. 821.)

We independently review orders granting or denying a motion to strike under section 425.16. (*Flatley*, *supra*, 39 Cal.4th at pp. 325-326.) Only causes of action that satisfy both prongs of the anti-SLAPP statute, i.e., that arise from protected speech or petitioning activity and that lack even minimal merit, are subject to being stricken under the anti-SLAPP statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

## III. ANALYSIS

According to Defendants, Plaintiffs' claims have minimal factual support against them, based only upon their actions on behalf of their clients in the UD actions which occurred after the nonjudicial foreclosure of the Property. Thus, the main issue is whether the claims asserted by Plaintiffs arise from protected activity. Plaintiffs disagree, contending their complaint was in part about the nonjudicial foreclosure

6

proceedings and in part about the UD actions. They claim Defendant Randall D. Naiman, "an experienced foreclosure attorney knew his lawsuits had no merit yet he kept filing one frivolous [UD] after another . . . in an attempt to 'bully' and 'intimidate' the pro[.] per[.] [Plaintiffs] into moving."

"The subjective intent of a party in filing a complaint is irrelevant in determining whether it falls within the ambit of section 425.16. 'There simply is "nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable." [Citation.]' [Citation.]" (*JSJ Ltd. Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521.)

Each UD action was a "written or oral statement or writing made before a . . . judicial proceeding . . . ." (§ 425.16, subd. (e)(1); *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055, ["Defendants' act of filing the complaint [for abuse of process] in the underlying action squarely falls within section 425.16, subdivision (e)(1)."].) "Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit. [Citations.]" (*JSJ Partnership v. Mehrban*, *supra*, 205 Cal.App.4th at pp. 1521-1522.)

While Plaintiffs admit that the first amended complaint was based in part on the UD actions, the remainder was based on the nonjudicial foreclosure. Thus, they argue that the trial court correctly applied the holding in *Garretson* and concluded that the first causes of action regarding the nonjudicial foreclosure were not subject to the anti-SLAPP statute. In *Garretson,* we held that the act of noticing a nonjudicial foreclosure sale does

7

not qualify as a protected activity under the anti-SLAPP statute. (*Garretson*, *supra*, 156 Cal.App.4th at pp. 1515, 1524-1525.) But a fair reading of Plaintiffs' claims shows that they are centered on Plaintiffs' primary assertion that defendants (generic to include all defendants being sued) either fraudulently or negligently foreclosed on the Property. However, Plaintiffs acknowledge that Defendants "did not directly participate in" the nonjudicial foreclosure proceedings. Thus, Plaintiffs seek to bootstrap those proceedings to Defendants' representation of their clients in the UD actions in order to avoid application of the anti-SLAPP statute. Relying on *Garretson*, the trial court agreed with such application. We do not.

The applicability of the anti-SLAPP statute is determined by the "principal thrust or gravamen" of the claim. (*Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 188, italics omitted; see also *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) In each of the four causes of action, Plaintiffs challenge the nonjudicial foreclosure. In the fifth they challenge the UD actions. The only way to keep Defendants in this action is through the use of their representation of LaSalle/BofA in the UD actions. However, such representation is a protected activity and is a proper subject of a motion made pursuant to the anti-SLAPP statute. Where causes of action allege both protected and unprotected activity, all the causes of action must be stricken. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308; *Rusheen*, *supra*, 37 Cal.4th at pp. 1064-1065.) Thus, we hold that all of Plaintiffs' causes of action against Defendants arise from their protected activity and are subject to the anti-SLAPP motion.

8

Regarding Plaintiffs' likelihood of prevailing on the merits of their claims, they are unable to carry their burden of a probability of success with regard to their claims against Defendants in light of the litigation privilege. (*Flatley*, *supra*, 39 Cal.4th at p. 323; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 972.) "The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding. '"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citation.]" (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1172, fn. omitted.)

"The purposes of [Civil Code] section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, '[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by [Civil Code] section 47[, subdivision (b)] has been given broad application.' [Citation.]" (*Rusheen*, *supra*, 37 Cal.4th at p. 1063.) "A prelitigation communication is privileged only if it 'relates to litigation that is contemplated in good faith and under

9

serious consideration.' [Citation.] 'Good faith' in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication. [Citation.] The requirement of good faith contemplation and serious consideration provides some assurance that the communication has some ""'connection or logical relation'"" to a contemplated action and is made """to achieve the objects"""' of the litigation. [Citation.]" (*Fremont Reorganizing Corp. v. Faigin*, *supra*, 198 Cal.App.4th at p. 1173.)

Based on the above, Defendants' motion to dismiss pursuant to the anti-SLAPP statute should have been granted because their only connection to Plaintiffs' claims stems from their representation of LaSalle/BofA in the UD actions. Thus, we reverse the trial court's order denying Defendants' anti-SLAPP motion and direct the trial court to enter an order granting it and dismissing the complaint as to Defendants.

We note that upon remand to the trial court for entry of a new order granting Defendants' anti-SLAPP motion and dismissal of the complaint as to Defendants, the trial court must conduct further proceedings pursuant to section 425.16, subdivision (c). "Under subdivision (c) of section 425.16, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.' This section authorizes the court to make an award of reasonable attorney fees to a prevailing defendant, which will adequately compensate the defendant for the expense of responding to a baseless lawsuit. [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.) Attorney fees are mandatory to the prevailing defendant and the amount to a defendant on a successful anti-SLAPP motion is within the

discretion of the trial court. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131; *Paulus v. Bob Lynch Ford, Inc*. (2006) 139 Cal.App.4th 659, 685-686.) Any fee award must also include those incurred on appeal. (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1426.)

## IV. TIMELINESS OF THE ANTI-SLAPP MOTION

According to Plaintiffs, Defendants' anti-SLAPP motion was untimely. We disagree. Section 425.16, subdivision (f), in relevant part, provides that the "special motion [to strike] may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." According to the register of actions, Plaintiffs' first amended complaint was personally served on May 6, 2011. However, Defendants claim to have been served on May 10, 2011. Regardless of the actual service date, the statute provides that the motion "may" be filed within 60 days of service of the complaint, or at a later date based on the court's discretion. (§ 425.156, subd. (f).) Thus, assuming Defendants were served on May 10, they had until July 11 to file their anti-SLAPP motion (the 60th day falls on July 9, which is a Saturday, and thus, the motion was timely if filed on Monday, July 11). However, assuming Defendants were served on May 6, it was within the trial court's discretion to accept the motion, which it did. Either way, we find no merit to this argument.

## V. DISPOSITION

The order denying Defendants' anti-SLAPP motion is reversed. The trial court is directed to issue an order granting Defendants' anti-SLAPP motion in its entirety and

11

dismissing the complaint as to Defendants.  The trial court shall award attorney fees and

costs incurred by Defendants both in the trial court and on appeal.


      HOLLENHORST
                    Acting P. J.

We concur:

      RICHLI
             J.

      MILLER
             J.

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| BENNIE G. TRAPP, SR., et al, | |
| Plaintiffs and Respondents, | E054908 |
| v. | (Super.Ct.No. RIC1107293) |
| RANDALL D. NAIMAN et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | |

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on June 28, 2013, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c)(3);

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(c)(3). The opinion filed in this matter on June 28, 2013, is certified for publication.

HOLLENHORST
Acting P.J.

I concur:

RICHLI
J.

13