Filed 4/22/15  Darling v. Pentecost CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROSLYN DARLING, | |
| Plaintiff and Appellant, | E059958 |
| v. | (Super.Ct.No. INC1207986) |
| JOHN PENTECOST, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans and David M. Chapman, Judges.  Affirmed.

Roslyn Darling, in pro. per., for Plaintiff and Appellant.

Dickson & Dickson and Robert M. Dickson for Defendant and Respondent.

Plaintiff and appellant Roslyn Darling, together with her now-deceased coplaintiff Charles Vernoff[1] brought suit against defendant and respondent John Pentecost, among

---

[1]  We note that in the initial, handwritten caption of the complaint, this name is spelled "Veernoff," and this is how it appears in the trial court's register of actions. Nevertheless, in the body of the complaint and signature block, the name is spelled

*[footnote continued on next page]*

1

others, alleging breach of contract, harassment, and illegal eviction tactics in relation to efforts to evict her from Wagner Mobile Home & RV Park (the park).[2] Defendant is the attorney who, on behalf of the owner of the park, caused plaintiff to be served with a five-day notice to surrender possession. The present appeal arises from the trial court's order granting defendant's special motion to strike the complaint as a strategic lawsuit against public participation (anti-SLAPP motion) pursuant to Code of Civil Procedure[3] section 425.16 (the anti-SLAPP statute), and the court's order awarding fees and costs to defendant. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The complaint, filed on November 14, 2012, alleges that plaintiff moved into the mobilehome of her now-deceased coplaintiff Charles Vernoff in October 2012.[4] At the time, Mr. Vernoff was terminally ill, and wished to transfer ownership of his mobilehome and his tenancy in a site in the park to plaintiff. He apparently did in fact transfer

---

*[footnote continued from previous page]*

"Vernoff," and this is the spelling plaintiff uses in her briefing on appeal. We conclude "Vernoff" is most likely the correct spelling.

[2] The park's rules required tenants to be at least 55 years of age; plaintiff was too young to meet that requirement when Mr. Vernoff attempted to transfer ownership of his mobilehome and his tenancy in the park to her.

[3] Further undesignated statutory references are to the Code of Civil Procedure.

[4] In her briefing, plaintiff states that she occupied the mobilehome in September 2012. The discrepancy, however, is not pertinent to any issue we decide in this appeal.

ownership of the mobilehome itself; a certificate of title showing plaintiff to be the sole registered owner as of October 11, 2012, appears in our record.

Transfer of the tenancy in the park where the mobilehome was located was more difficult. Plaintiff was younger than the age limit set by the park's rules, but plaintiff and Mr. Vernoff believed that plaintiff's disability qualified her for a "federal and state disability exception" to that rule. The owner of the park disagreed, and on October 12, 2012, plaintiff was served with a five-day notice to surrender possession (five-day notice).[5] Plaintiff vacated the mobilehome prior to the filing of a lawsuit to evict her.[6]

The complaint alleges plaintiff and Mr. Vernoff suffered various forms of ill treatment at the hands of the mobilehome park's manager, owner, and residents. The only specific allegation relating to defendant is that, in his capacity as the attorney for the owner, he drafted the five-day notice and caused it to be served on plaintiff.

Defendant filed his anti-SLAPP motion on April 11, 2013. Plaintiff filed no written opposition to the motion, but appeared for the hearing on the motion on May 15,

---

[5] This document does not appear in our record; it was apparently attached as an exhibit to defendant's memorandum in support of his anti-SLAPP motion, but the exhibits to that motion were not included in the clerk's transcript.

[6] Plaintiff asserted in her briefing in the trial court that she did not move out, but only has been staying as a guest with friends because she is scared to stay at the mobilehome park. Again, to the extent there is a discrepancy between the allegations of the complaint and plaintiff's assertions in her briefing, that discrepancy is not pertinent to any issue we decide in this appeal.

2013.[7] The trial court granted the motion, and ordered the complaint struck in its entirety with respect to defendant. The court's minute order—not designated as part of the clerk's transcript by plaintiff, but in our record by virtue of being attached to her civil case information statement—notes that there was no opposition to the motion, but does not specify that the motion was granted on that basis alone; the minute order also recites that defendant "makes a showing that his conduct is protected activity under [section 425.16] and plaintiffs fail to establish a probability of prevailing."

The minute order granting the anti-SLAPP motion also indicates that plaintiff made an oral motion for a continuance and an oral motion for reconsideration, both of which were denied. However, no transcript of the hearing has been made a part of the record on appeal.

On August 7, 2013, defendant filed a motion for attorney fees pursuant to the anti-SLAPP statute's provision shifting fees to the prevailing party. (See § 425.16, subd. (c)(1).) Plaintiff filed a written opposition on August 15, 2013. Defendant filed a reply on August 23, 2013.[8] Plaintiff filed a response to defendant's reply on September 4, 2013. Following a hearing on September 6, 2013, the trial court granted the motion, and awarded defendant $7,122.50 in attorney fees and $806.00 in costs.

---

[7] Although plaintiff did not timely request oral argument, as required by local rule, the trial court did allow argument.

[8] This document appears in our record only as an entry on the trial court's docket, because plaintiff did not designate it for inclusion in the clerk's transcript.

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting defendant's anti-SLAPP motion. We find no error.

In ruling on an anti-SLAPP motion, the trial court conducts a two-part analysis: the moving party bears the initial burden of establishing a prima facie case that the plaintiff's cause of action arose from the defendant's actions in the furtherance of the rights of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the moving party meets its burden, the burden shifts to the plaintiff to establish a probability that he or she will prevail on the merits. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*).) We review the trial court's analysis de novo. (*Flatley*, *supra*, at pp. 325-326.)

With respect to the first prong of the anti-SLAPP analysis, the protections of the anti-SLAPP statute extend to "any act" in furtherance of a person's right of petition. (§ 425.16, subd. (b)(1).) Service of a notice of termination, as a necessary first step preceding the filing of an unlawful detainer compliant, is protected activity under the anti-SLAPP statute. (*Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1275 (*Ulkarim*).)

It appears from the complaint that all causes of action asserted against defendant—unlike those asserted against the manager and owner of the park—are based solely on the service of the five-day notice. (Cf. *Ulkarim*, *supra*, 227 Cal.App.4th at p. 1279 [distinguishing causes of action based solely on the service of a notice of termination from causes of action arising from the underlying decision to terminate a tenancy or evict

5

the tenants].)  At least, no specific facts pleaded, tying defendant to any other allegedly wrongful act, are to be found in the complaint.  As such, the trial court correctly concluded that defendant met his burden to show that the causes of action asserted in the complaint, insofar as they are asserted against him, arise from protected activity.

In her briefing on appeal, plaintiff emphasizes her contention that the five-day notice, and her eviction generally, were illegal and based on misrepresentations of law and fact.  This line of argument fails, however, because "the fact that a defendant's conduct was alleged to be illegal, or that there was some evidence to support a finding of illegality, does not preclude protection under the anti-SLAPP law."  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1188; see also *Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 120 [Fourth Dist., Div. Two] ["'Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit.'"].)  "An exception exists only where 'the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence.'"  (*McCubbin*, *supra*, at p. 1188 (quoting *Flatley*, *supra*, 39 Cal.4th at pp. 316, 320.)  Nothing in plaintiff's arguments, or revealed by our independent examination of the record, tends to show this exception to the rule applies.

With respect to the second prong of the anti-SLAPP analysis, plaintiff failed to meet her burden of establishing a probability she will prevail on the merits of her claims against defendant.  It is well established that "a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth evidence that would be admissible at trial."  (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151

6

Cal.App.4th 688, 699.)  As noted, plaintiff failed to submit any evidence at all in opposition to the motion.  The trial court therefore correctly concluded that both prongs of the anti-SLAPP analysis had been satisfied, and properly granted the motion.

Much of plaintiff's briefing on appeal is premised on the notion that the trial court granted the anti-SLAPP motion solely on the basis that she failed to file an opposition. The trial court's minute order, however, does not support such a conclusion: in addition to noting that plaintiff failed to file an opposition, the court's minute order also specifically states that both prongs of the anti-SLAPP analysis were satisfied.  No transcript of the hearing was made part of the record on appeal, so plaintiff's representations regarding the basis of the ruling cannot be verified, except by reference to the minute order.  In any case, we generally review the trial court's result, not its reasoning.  (See *Town of Atherton v. California High-Speed Rail Authority* (2014) 228 Cal.App.4th 314, 354, fn. 13.)  For the reasons discussed above, defendant's anti-SLAPP motion was properly granted. [9]

Plaintiff further contends that the trial court erred by denying her request for a continuance to allow her more time to file a written opposition, and by denying her permission to file a motion for reconsideration regarding the grant of defendant's anti-SLAPP motion.  However, as already noted, the transcript of the hearing is not part of the record on appeal; plaintiff elected to proceed without a record of the oral proceedings in

---

[9]  We therefore need not and do not consider whether lack of written opposition would be an independently sufficient basis to grant an anti-SLAPP motion and award fees to the moving party.

the trial court. We therefore have no basis in the record on which we might conclude the trial court committed error with respect to plaintiff's oral motions made during the hearing of defendant's anti-SLAPP motion.[10] (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 (*City of Santa Maria*) ["The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance."]; Calif. Rules of Court, rule 8.830(a)(2) ["[i]f an appellant wants to raise any issue that requires consideration of the oral proceedings in the trial court, the record on appeal must include a record of these oral proceedings . . . ."].)

In short: Plaintiff has failed to demonstrate any error with respect to the grant of defendant's anti-SLAPP motion. The causes of action asserted against defendant arise from protected activity, and plaintiff failed to produce any evidence, let alone evidence showing a probability of success.

**B. Defendant's Motion for Attorney Fees and Costs Was Properly Granted.**

Plaintiff has not contested the trial court's calculation of defendant's reasonable attorney fees and costs. She argues, however, that the trial court erred by failing to take into account her inability to pay those sums in making its award of fees and costs. We disagree.

---

[10] Moreover, nothing in the record indicates that the trial court denied plaintiff permission to file anything; rather, the minute order granting defendant's anti-SLAPP motion indicates that the court heard and denied an oral motion for reconsideration by plaintiff, as well as an oral motion for a continuance.

8

The anti-SLAPP statute provides for award of fees and costs to a party who prevails on an anti-SLAPP motion. (§ 425.16, subd. (c)(1) [with certain exceptions not relevant here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs"].) "[T]he award of attorney fees to a defendant who successfully brings a special motion to strike is not discretionary but mandatory." (*Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 215.) "Although the award of fees must be reasonable, it must also 'adequately compensate the defendant for the expense of responding to a baseless lawsuit.'" (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1261 (*Maughan*).) We review the trial court's determination of reasonableness for abuse of discretion. (*Id.* at p. 1250.)

There is no dispute that defendant prevailed on his anti-SLAPP motion, and plaintiff makes no argument that defendant did not in fact incur the amount of fees and costs awarded, or that the amount incurred is unreasonable, given the nature of the litigation. (See *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448 [discussing factors to be considered in determining reasonableness of attorney fees].) Neither does the amount—$7,122.50 in attorney fees and $806.00 in costs—appear unreasonable on its face. (See, e.g., *Maughan*, *supra*, 143 Cal.App.4th at p. 1253 [affirming $23,000 award].) Given these premises, and the mandatory nature of the award of fees and costs under the anti-SLAPP statute, the conclusion that the trial court did not err in its award of fees necessarily follows.

Plaintiff relies on *Patton v. County of Kings* (9th Cir. 1988) 857 F.2d 1379, 1382 (*Patton*), for the principle that the trial court should consider the financial resources of

9

the plaintiff in making an award of attorney fees to a prevailing defendant. This reliance is misplaced in several respects. First, *Patton* does not involve a mandatory award of attorney fees following the grant of an anti-SLAPP motion, but rather a *discretionary* award of attorney fees to a successful defendant in a civil rights action under 42 U.S.C. § 1983. (*Patton*, *supra*, at p. 1381.) Plaintiff has not cited, and we have not discovered, any authority requiring California courts to consider the unsuccessful plaintiff's financial status in making an award of attorney fees and costs to a prevailing defendant under the anti-SLAPP statute.[11]

Second, although plaintiff has made, both in the trial court and on appeal, representations regarding her financial status in her briefing, she submitted no evidence of her financial status. Argument by a party—whether through counsel or in pro. per.—is not evidence. (See *Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173.)

Third and finally, even assuming the trial court had a duty to consider plaintiff's financial status in making its award to defendant, and even assuming plaintiff's representations to be adequate evidence thereof, our record does not affirmatively demonstrate that the trial court did *not* take that factor into account. (See *City of Santa Maria, supra*, 211 Cal.App.4th at p. 286.) No transcript of the hearing on defendant's motion for attorney fees is in our record, and the trial court's order granting the motion does not elaborate on the court's reasoning. Furthermore, it would not be beyond the

---

[11] Even if *Patton* did involve an award of fees under the anti-SLAPP statute, it would not be binding on us. (*Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 663 ["Although we are obligated to follow the decisions of the United States Supreme Court, we are not bound by the decisions of the lower federal courts."].)

bounds of reason for the trial court to conclude that any weight plaintiff's financial status could be given is outweighed by other factors, such as the requirement to adequately compensate the defendant, and the relatively modest amount of fees and costs requested. (See *Maughan*, *supra*, 143 Cal.App.4th at p. 1250 [discussing abuse of discretion test].)

In short, plaintiff has not carried her "burden to affirmatively demonstrate reversible error" in any respect.  (*California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 392.)

## III. DISPOSITION

The orders appealed from are affirmed.  Defendant shall recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

J.

We concur:

RAMIREZ

P.J.

RICHLI

J.

11