Steven **FRIEDMAN** and **FSZ Media, LLC,** Plaintiffs,

v.

**DIRECTV, a Delaware corporation; DirecTVholdings, LLC, a Delaware limited liability company; and Does 1 through 10, inclusive, Defendants.**

**Case No. CV 15–00844–JEM**

United States District Court,
C.D. California.

Signed 07/29/2015

Glen L. Kulik, Natalie N. Mutz, Patricia Brum, Kulik Gottesman and Siegel LLP, Sherman Oaks, CA, for Plaintiff.

David Halberstadter, Gloria C. Franke Shaw, Joanna M. Hill, Katten Muchin Rosenman LLP, Los Angeles, CA, for Defendant.

## SUPPLEMENTAL RULING ON DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE

JOHN E. MCDERMOTT, UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

On June 29, 2015, this Court issued a partial ruling on the Special Motion To Strike Complaint Pursuant To The California Anti–SLAPP Statute, California Civil Procedure § 425.16 ("Motion"), filed by Defendants DirecTV and DirecTV Holdings, LLC (collectively "DirecTV"). The Court will not repeat the Introduction to that ruling but incorporates it here. As noted in the June 29, 2015 Order, Plaintiffs Stephen Friedman and FSZ Media, LLC, did not have any opportunity to file a brief in response to DirecTV's late presented argument that Plaintiffs' breach of confidence claim must fail because Plaintiffs' ideas allegedly used in Fantasy Zone lack novelty. Plaintiffs were permitted to file a Second Supplemental Brief on novelty, which they did on July 10, 2015. DirecTV filed a Supplemental Reply Brief on June 17, 2015.

The Court concludes that DirecTV has met its burden to establish that Plaintiffs' breach of implied contract, breach of confidence, fraud, and negligent misrepresentation claims arise from an act in furtherance of DirecTV's right of free speech in connection with a public issue under § 425.16(b)(1) and (e). The Court also GRANTS DirecTV's Special Motion to Strike Plaintiffs' breach of confidence claim.

### II. APPLICABILITY OF ANTI–SLAPP STATUTE

#### A. Plaintiffs' Breach Of Implied Contract And Breach Of Confidence Claims

In its first Claim for Relief, Plaintiffs allege an implied in fact contract that Plaintiffs were to be paid and credited if DirecTV "used" Plaintiffs' ideas for a fantasy sports channel. (Complaint, ¶ 33.) Plaintiffs further allege that DirecTV "used " Plaintiffs' ideas for its own Fantasy Zone Channel without paying or crediting Plaintiffs. (Id., ¶ 34.) In its Second Claim for Relief, Plaintiffs allege a breach of confidence claim for "disclosing the ideas submitted by Plaintiffs, without the latter's knowledge or consent, to third parties so that the FZC could be created and operate." (Id., ¶ 40.) Plaintiffs then allege that DirecTV used Plaintiffs' ideas for a fantasy sports channel without payment and disclosed those ideas without consent. DirecTV contends that the alleged use and disclosure of Plaintiffs' ideas in the development and creation of DirecTV's Fantasy Zone Channel is protected speech activity in connection with a public issue, and thus within § 425.16(b)(1) and (e). Plaintiffs disagree, arguing that their lawsuit is based on nonpayment and lack of consent which

are not protected speech activity subject to the anti–SLAPP statute. The Court concludes that DirecTV has the better of the argument.

 Section 425.16(b)(1) applies to a cause of action "arising from" any act in furtherance of First Amendment protected speech activity in connection with a public issue. In explaining the concept of "arising from," the California Supreme Court in City of Cotati v. Cashman, 29 Cal.4th 69, 78, 124 Cal.Rptr.2d 519, 52 P.3d 695 (2002), held that it "means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech ... the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (Emphasis in text.) Courts disregard the labeling of a claim and examine the principal thrust or gravamen of a cause of action, which is assessed by identifying the "allegedly wrongful" and "core injuring-producing conduct" that provides the foundation for the claim. Hylton v. Frank E. Rogozienski, Inc., 177 Cal.App.4th 1264, 1272, 99 Cal. Rptr.3d 805 (2009). The anti–SLAPP statute, moreover, is not rendered inapplicable where both protected and unprotected activity are implicated by a cause of action. Scott v. Metabolife Intern., Inc., 115 Cal. App.4th 404, 414–15, 419, 9 Cal.Rptr.3d 242 (2004); Fox Searchlight Pictures, Inc. v. Paladino, 89 Cal.App.4th 294, 308, 106 Cal.Rptr.2d 906 (2001); see also Trapp v. Naiman, 218 Cal.App.4th 113, 121, 159 Cal. Rptr.3d 462 (2013). In such instances, courts must examine the gravamen of each cause of action to determine whether the allegations of constitutionally protected activity are "merely incidental." Scott, 115 Cal.App.4th at 419, 9 Cal.Rptr.3d 242.

 The Court finds DirecTV's arguments on the gravamen of the case persuasive. At the June 2, 2015 hearing, DirecTV's counsel contended that "based on Plaintiff's allegations, the gravamen of the breach of implied contract claim is the use of his ideas in Fantasy Zone without payment ... And for the breach of confidence claim, the gravamen is the disclosure of his ideas in Fantasy Zone without consent." (Tr. 34.) Counsel then argues that Plaintiff Friedman's allegations of the use and disclosure of his ideas is not merely incidental but "equally part of the gravamen of the claim." (Tr. 35.) Counsel further argues that "you can't have the claim without use or without the payment ... if there's no use, there's no claim. If there's no payment, there's no claim." Id.

DirecTV did not create or manufacture the allegations on which it relies to assert the applicability of § 425.16. The allegations are Plaintiffs' own creation. Plaintiffs allege that "Defendants failed to pay for their use of Plaintiffs' ideas" (Complaint, ¶ 34) and "committed a breach of confidence by disclosing the ideas submitted by Plaintiffs, without the latter's knowledge or consent." (Id., ¶ 40.) (Emphasis added.) Plaintiffs seek to recover $200,000,000 because DirecTV allegedly used Plaintiffs' ideas in Fantasy Zone (Complaint, ¶¶ 43, 48), which is an act in furtherance of protected speech. The allegations of use and disclosure are not merely incidental to unprotected conduct but essential to each cause of action. There cannot be a "breach" without the use or disclosure of Plaintiffs' ideas in DirecTV's own Fantasy Zone channel. Plaintiffs even refer to their own claim as an "idea theft" case, or, put differently, the case could be characterized as an unauthorized use and disclosure case as much as a nonpayment and nonconsent case. In regard to Plaintiffs' breach of implied contract claim, use by DirecTV of Plaintiffs' ideas in the development of Fantasy Zone without consent is as central to what is "allegedly wrongful" as nonpayment. The allegation of DirecTV's use of

Plaintiffs' ideas is too intertwined with the nonpayment allegation to be separated or regarded as "merely incidental." The same analysis applies to Plaintiffs' breach of confidence claim in that Plaintiffs allege that DirecTV "disclosed" Plaintiffs' ideas "so that FSZ could be created and operated." (Complaint, ¶ 40.)

Plaintiffs' authority on the issue is also wanting. Plaintiffs provided the Court with the decision of Willens v. Kohan, 2008 WL 2026507, at *1 (Cal. Ct. App. May 13, 2008), which they contend is directly on point. Plaintiffs also provided the recent case of Jordan–Benel v. Universal City Studios, Inc., C.D. Cal. Case No. CV 14–5577 MWF (MRW), decided June 24, 2015. Willens, however, states on its face that it is not published and essentially is not authority in California courts under California Rules of Court, Rule 8.1115. Jordan–Benel has been appealed to the Ninth Circuit. Neither Willens nor Jordan–Benel addresses or discusses Scott, Fox Searchlight, or Trapp.

The Court also finds that DirecTV's alleged use of Plaintiffs' ideas in its Fantasy Zone channel is "in connection with a public issue or an issue of public interest." § 425.16(e)(4). In Nygard, Inc., v. Uusi-Kerttula, 159 Cal.App.4th 1027, 1042, 72 Cal.Rptr.3d 210 (2008), the court held that an issue of public interest is "any issue in which the public is interested ... the issue need not be 'significant' ... it is enough that it is one in which the public takes an interest." (Emphasis in text.) See also Tamkin v. CBS Broadcasting, Inc., 193 Cal.App.4th 133, 143, 122 Cal.Rptr.3d 264 (2011) (public demonstrably interested in creation and broadcasting of episode of CSI). The Shaw Declaration, ¶ 3, Exs. A–E, demonstrates substantial, widespread public interest in fantasy football, the sole focus of Fantasy Zone. Plaintiffs' own pitch materials demonstrate the widespread public interest in fantasy football and fantasy sports. The research section provides that "over 35 million North Americans play fantasy sports" and that fantasy sports is "a $1.1 billion a year industry." Stratton Decl., Ex. 28.[1]

Plaintiffs try to blunt this evidence by arguing that the public has no interest in DirecTV's failure to pay and failure to disclose but the Court already has rejected that rationale. It is DirecTV's alleged use and disclosure of Plaintiffs' ideas in its Fantasy Zone channel that satisfies the public interest requirement. Plaintiffs also cite Dyer v. Childress, 147 Cal.App.4th 1273, 55 Cal.Rptr.3d 544 (2007), which involved a claim against the creators of the film Reality Bites for using the plaintiff's name as a character in the film. Tamkin, 193 Cal.App.4th at 144, 122 Cal.Rptr.3d 264, however, distinguished Dyer because it found no discernible public interest in the plaintiff's persona, whereas defendants showed public interest in the CSI episode. Similarly here, the ideas DirecTV are alleged to have used in Fantasy Zone are not personal or individual but involve the larger subject of fantasy football and the exhibition of Fantasy Zone in which plainly there is demonstrated public interest. The Court also observes, as did the Court in Nygard, 159 Cal.App.4th at 1039, 72 Cal. Rptr.3d 210, that § 425.16 is to be "construed broadly." § 425.16(a).

DirecTV has met its burden to demonstrate that Plaintiffs' breach of implied contract and breach of confidence claims arise from acts in furtherance of the right of free speech in connection with a public issue under § 425.16(b)(1) and (e).

---

1. The Court overrules Plaintiffs' Objection to Exhibit 28 as the materials are Plaintiffs' own, submitted to DirecTV. Redaction cannot be an issue because the evidence cited here is now in the public file.

## B. Plaintiffs' Fraud And Negligent Misrepresentation Claims

■ The analysis of Plaintiffs' fraud and negligent claims is similar to that for the breach of implied contract and breach of confidence claims. Plaintiffs' fraud and negligent misrepresentation claims assert that DirecTV's executives Toby Berlin and Alex Kaplan told Plaintiff Friedman they had not considered and were not working on a fantasy sports network concept by itself or with others. (Complaint, ¶¶ 13, 16, 21, 43, 48.) These representations are alleged to have been false when made. (Complaint, ¶¶ 43, 48.) They were false because Kaplan and DirecTV in fact had been working on a fantasy sports channel for two years. (Complaint, ¶¶ 30, 31, 43, 48.) DirecTV's misrepresentations are alleged to have been made to Plaintiffs to induce them to share with DirecTV their business plan and market research to further DirecTV's efforts to launch Fantasy Zone. (Complaint, ¶¶ 43, 48.) In reliance on the representations of Berlin and Kaplan, Plaintiffs spent time and money in 2012 and 2013 developing a business plan, conducting extensive market research, producing a prototype episode, and meeting and communicating with DirecTV's executives. (Complaint, ¶¶ 44, 49.) But for the alleged false statements, Plaintiffs allege that they never would have done any of these things. Id.

Plaintiffs contend that the injury producing activity giving rise to Plaintiffs' fraud and negligent misrepresentation claims is the statements of Berlin and Friedman, which were about a private business transaction that did not involve an issue of public interest. Although the representations are part of the gravamen of the claim, so also is their alleged falsity. Falsity is a required element of fraud and misrepresentation claims. Brakke v. Economic Concepts, Inc., 213 Cal.App.4th 761, 768–769, 153 Cal.Rptr.3d 1 (2013). What renders the statements of Berlin and Kaplan false, as alleged in the Complaint, is the inducement of Friedman's disclosures of his fantasy sports ideas and DirecTV's alleged use of those ideas in Fantasy Zone (Complaint, ¶¶ 43, 48), which are acts in furtherance of protected speech activity. There is no claim without the use of Plaintiffs' ideas in Fantasy Zone.[2] Once again, these claims of fraud and negligent misrepresentation include allegations of both protected and unprotected activity. The falsity of the alleged misrepresentations is not merely incidental; it is essential to the fraud and misrepresentation claims.[3]

DirecTV has met its burden to demonstrate that Plaintiffs' fraud and negligent misrepresentation claims arise from acts in furtherance of speech in connection with a public issue under 425.16(b)(1) and (e).

## III. NOVELTY

DirecTV has demonstrated that Plaintiffs' breach of confidence claim is based on protected speech activity of public interest.

---

**2.** As further support for this conclusion, Friedman states he spent $100,000 in developing his Fantasy Sports Zone concept. (Declaration, ¶ 11). Had Plaintiffs limited their damage claim to this amount, their argument that only the statements of Berlin and Kaplan constitute the gravamen of the claims might have more merit. Plaintiffs, however, seek to recover far more than $100,000. They seek to recover $200,000,000 (Complaint, ¶¶ 45, 50) because the alleged misrepresentations were used to induce disclosure of Plaintiff's ideas and to further DirecTV's efforts to launch its own Fantasy Zone channel (Complaint, ¶¶ 43, 48), which are acts in furtherance of protected activity.

**3.** Because the gravamen of these claims includes protected activity, the Court need not reach plaintiffs' assertion of the commercial speech exemption to the anti–SLAPP statute. § 425.17. The protected activity is expressly excepted from the exemption in any event. § 425.17(d)(2).

Now Plaintiffs must make a prima facie showing of facts to establish a reasonable probability of prevailing on the claim. § 425.16(b)(1); Makaeff v. Trump University, LLC, 715 F.3d 254, 261 (9th Cir. 2013); Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001).

■ Both in the Complaint (¶¶ 13, 38) and at the June 2, 2015 hearing (Tr. 18), Plaintiffs asserted that their concept of a stand-alone channel dedicated entirely to fantasy sports covering the entire United States rather than on a local or regional basis, which had never been done before, was novel. See also Friedman Declaration, ¶ 5. This assertion is the basis of Plaintiffs' breach of confidence claim. DirecTV contends that it did not use this idea in Fantasy Zone, which is a program solely about football that airs only on Sundays.

■ There is no dispute that an essential element of Plaintiffs' breach of confidence claim is novelty. As set forth in Berkla v. Corel Corp., 302 F.3d 909, 917 (9th Cir. 2002), citing Enter. Research Group v. Genesis Creative Group, Inc., 122 F.3d 1211, 1226–27 (9th Cir. 1997), to state a breach of confidence claim, a plaintiff must demonstrate: (1) plaintiff conveyed confidential and novel information to the defendant; (2) defendant knew the information was being disclosed in confidence; (3) defendant understood the confidence was to be maintained; and (4) there was a disclosure or use in violation of the understanding. The information need not be a trade secret or protectible under copyright law. Tele–Count Engineers, Inc. v. Pac. Tel. & Tel. Co., 168 Cal.App.3d 455, 462, 214 Cal.Rptr. 276 (1985).[4]

The Court does view the idea for a 24/7 all sports fantasy sports network as novel

in that it has never been done before. DirecTV, however, has not used and is not using that idea in Fantasy Zone. Plaintiffs do not dispute the point. Necessarily, then, there has been no use of that idea in violation of the understanding of the parties that it remain confidential.

In their Second Supplemental Brief, Plaintiffs attempt to shift their "novelty" argument to the ideas underlying their Fantasy Sports network idea. This construction and other alternate constructions of what is novel and allegedly used by DirecTV do not appear in the Complaint and were not presented at the hearing where Plaintiffs referred only to the idea of a 24/7 all sports fantasy network. (Tr. 18.) These new constructions of what is novel appear for the first time in the Second Supplemental Brief.

DirecTV, relying on the declaration of Plaintiffs' expert Larry Gerbrandt, argues that none of Plaintiffs' ideas alleged to have been used in Fantasy Zone are novel. DirecTV contends that both shows, Plaintiffs' Fantasy Sports Zone and DirecTV's Fantasy Zone, target the interests and informational needs of fantasy sports fans, and are not new. The alleged similarities of the two shows consist of a multi anchor set with multiple hosts to have been used in Fantasy Zone, news desks with open lap tops, male and female onscreen talent, close-up shots, a ticker, use of the word fantasy, etc. See Gerbrandt Decl., ¶¶ 7, 16, 28. None of these program elements are new. No evidence has been presented that any are.

Plaintiffs argue that the similarities between Plaintiffs' Fantasy Sports network and DirecTV are irrelevant, but offer no authority or convincing reason to support

---

4. The Court finds no legal precedent to support Plaintiffs' assertion that an idea must be original as to the defendant. Plaintiffs' reliance on Chandler v. Roach, 156 Cal.App.2d 435, 439, 319 P.2d 776 (1957) is misplaced. Chandler was a breach of implied contract case in which a jury instruction of novelty to the defendant was given in error.

that assertion. Presumably, only Plaintiffs' ideas that are similar to and used in Fantasy Zone could be novel. Plaintiffs' ideas that were not used in Fantasy Zone obviously cannot be actionable, even if novel. Thus, in accordance with the elements of a breach of confidence claim, the Court must focus on what ideas were conveyed, which were novel, and which were used in violation of the parties' understanding that the novel ideas were to remain confidential. Plaintiffs have not demonstrated that the idea they themselves have identified as novel was and is being used in Fantasy Zone, nor has it demonstrated that any of their other ideas allegedly used in Fantasy Zone are novel.

Plaintiffs, however, argue that their combination of elements, even if each was used in the past, is novel but never explain why the particular combination of ideas alleged to have been used here is novel, in the absence of any use of their idea for a 24/7 all sports fantasy network. Plaintiffs, moreover, do not cite breach of confidence cases in which novelty was found from a unique combination of old ideas or from a totality of elements. Stanley v. Columbia Broadcasting System, Inc., 35 Cal.2d 653, 672, 221 P.2d 73 (1950), relied on by Plaintiffs, is a breach of implied contract case in which a jury instruction was given that Plaintiff may prevail where his program was appropriated, "including an original element thereof." Plaintiff has not identified any original element contained in the ideas allegedly used in Fantasy Zone. Plaintiffs' arguments on novelty all falter because DirecTV did not use what Plaintiffs allege is novel, i.e., a 24/7 all sports fantasy channel, in Fantasy Zone and because they have not demonstrated that any of their other ideas that DirecTV allegedly did use are novel, either singly or in combination.

The Court denies Plaintiffs' request for discovery. Plaintiffs were given fair opportunity to meet DirecTV's argument of a lack of novelty as to its breach of confidence claim. Plaintiffs knew what DirecTV's argument was from its reply brief and the hearing, but failed to identify their own ideas used in Fantasy Zone that are novel. Plaintiffs could have presented declarations on novelty in support of their Second Supplemental Brief but did not do so. The issue of which of their ideas that appear in Fantasy Zone are novel is plainly not an issue solely within DirecTV's knowledge. Plaintiffs have not demonstrated that any discovery is necessary for them to identify their own novel ideas they claim are used in Fantasy Zone.

The Court finds that Plaintiffs have not made a prima facie showing that it has a reasonable probability of prevailing on its breach of confidence claim. They have not demonstrated that their ideas purportedly used in Fantasy Zone are novel.

The Court GRANTS DirecTV'S Special Motion to Strike Plaintiffs' breach of confidence claim.

**IT IS SO ORDERED.**